IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DANA LEE,                       § | |
|     Plaintiff,              § | |
| § | |
| v.                              § | |
| § | Civil Action No. 3:12-CV-4454-B-BK |
| § | |
| CAROLYN W. COLVIN,[1]           § | |
| Acting Commissioner of the      § | |
| Social Security Administration, § | |
|     Defendant.             § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

This case has been referred to the undersigned for Findings, Conclusions, and Recommendation on the parties' cross motions for summary judgment.  For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment* (Doc. 14) be **GRANTED**, Defendant's Motion for Summary Judgment (Doc. 15) be **DENIED**, the Commissioner's decision be **REVERSED**, and the case be **REMANDED** for further proceedings**.**

## I.  BACKGROUND[2]

### A.     Procedural History

Dana Lee (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits under Title II of the Social Security Act ("The Act").  (Tr. 10-25).  Plaintiff filed for SSI, claiming her disability onset date was February 25, 2010.  (Tr. 159-60).  She averred that she was disabled

---

[1] Carolyn W. Colvin is substituted as the current acting commissioner of the Social Security Administration, replacing Michael J. Astrue, pursuant to Federal Rule of Civil Procedure 25(d).

[2] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr"; the pages are referenced by Bates numbers.

due to "cervical spondylosis, degenerative disc disease of the lumber [sic] spine, hypertension, diabetes mellitus, and affective disorder [sic]." (Tr. 15, 21). Her application was denied at all administrative levels, and she timely appealed the Commissioner's decision to this Court under 42 U.S.C. § 405(g). (Tr. 1-5, 8-9).

**B.    Factual History**

In 2007, Plaintiff began treatment for pain with Dr. Lorraine Rudder at Definitive Rehabilitation and Pain Management. (Tr. 303). Plaintiff experienced back pain, shoulder spasms and pain that radiated to her legs, which increased with movement. *Id.* Dr. Rudder noted that Plaintiff was "in marked distress" and was "often tearful" during the examination, and she diagnosed Plaintiff with cervical spine stenosis, thyroid nodule, depression, and marked debilitation. (Tr. 303-304).

Dr. Rudder referred Plaintiff to Dr. Shaad Bidiwala at Texas Neurosurgery for further evaluation of her neck pain, upper extremity numbness and tingling, and fatigue. (Tr. 350-51). There, Plaintiff underwent a MRI which showed a disc herniation in Plaintiff's cervical spine. (Tr. 352). Dr. Bidiwala noted that physical therapy, muscle relaxers, and pain medication failed to permanently relieve Plaintiff's pain, and recommended physical therapy, pain management and surgery as options for Plaintiff's cervical spine. (Tr. 350-351). Subsequently, Plaintiff underwent a cervical disectomy and fusion. (Tr. 342-43).

After surgery, and from 2007 to 2009, Plaintiff experienced a reduction in her neck pain. (Tr. 297, 299, 301, 327-28, 332-33, 335-41).[3] In December 2007, however, Plaintiff fell, which

---

[3] Although Plaintiff relies on many medical records in the administrative record that precede 2010, those records are not of particular relevance given Plaintiff's alleged disability onset date of February 2010. *See* 20 C.F.R. 416.912(d) (providing that if the claimant states that his

caused her to experience some neck pain and bilateral shoulder pain that radiated to her head. (Tr. 330-31). Dr. Bidiwala advised Plaintiff to continue physical therapy and postpone any active measures, such as aggressive exercising, during that time. (Tr. 330). Dr. Bidiwala also suggested that Plaintiff consider "more passive modalities such as a TENS unit, heat and, traction." *Id.*

By early 2010, Plaintiff reported an increase in her pain and, in January 2010, Dr. Rudder performed a function assessment. (Tr. 248-53). The functional assessment revealed that Plaintiff had a decreased range of motion in her cervical spine and shoulder, and placed her at a seventy-five percent disability rating according to the Functional Rating Index. (Tr. 251, 253). In Dr. Rudder's functional evaluation, she concluded that Plaintiff could lift and carry a maximum of ten pounds and could perform postural movements only 34 to 66 percent of the work day. (Tr. 248).

In February 2010, Dr. Donald Nicholas noted that Plaintiff was often fatigued due to pain and life stressors, and that she experienced neck and back pain and headaches. (Tr. 363, 365). In April 2010, Plaintiff reported pain and stiffness and depression caused by these symptoms. (Tr. 370). She also reported lower back pain, and an MRI in March 2010 revealed disc bulges in her lumbar spine. (Tr. 307-08, 370).

In June 2010, Plaintiff underwent a psychological examination by Dr. Katherine Donaldson of the Donaldson Wellness Center. (Tr. 255). Dr. Donaldson reported that Plaintiff's gait "was slow and deliberate." *Id.* Dr. Donaldson also reported that Plaintiff's "mood was depressed," and that she experienced "anxiety as a result of coping with chronic pain." (Tr. 269,

---

disability began less than 12 months before he filed his application, the Commissioner will develop his medical history beginning with the month the claimant says the disability began).

261). Dr. Donaldson opined that Plaintiff "would likely benefit from pain management." *Id.* Dr. Donaldson further found that Plaintiff demonstrated limited short-term memory capability, but concluded that her long-term memory was intact, her attention and concentration were good, and that she "is able to reasons [sic], but is having difficulty consistently making occupational, personal, and social adjustments." *Id.* Dr. Donaldson concluded Plaintiff prognosis would be "good" if she were to engage in psychotherapy and pain management to treat her symptoms. *Id.*

In July 2010, non-examining state agency medical consultants conducted a physical residual functional capacity assessment. (Tr. 262-87). Overall, the consultants found that Plaintiff's activities of daily living were moderately limited, and that Plaintiff's difficulties in maintaining concentration, persistence, or pace were mildly limited. *Id.* One consultant concluded that Plaintiff could lift and/or carry a maximum of twenty pounds occasionally and lift and/or carry a maximum of ten pounds frequently. (Tr. 263). The consultant also concluded that Plaintiff could sit, stand and/or walk about six hours in an eight-hour workday with normal breaks. *Id.* Additionally, the consultant noted that Plaintiff reported that "she shops, does household chores as her pain will allow, and can leave the house alone [and/or] drive if necessary." (Tr. 264). However, the consultants generally opined that Plaintiff's alleged limitations were not consistent with their conclusions. (Tr. 267, 282).

That same month, Dr. Rudder concluded that Plaintiff could sit for three hours, stand/walk for one hour, and lie down/recline for six hours during an eight-hour work day. (Tr. 289). Dr. Rudder also opined that Plaintiff would frequently need to change positions and elevate her legs during an eight-hour work day, would never be able to lift and carry more than ten pounds, and can only occasionally carry up to ten pounds. *Id.* Additionally, Dr. Rudder stated that Plaintiff would need frequent rest periods during the day. (Tr. 290).

In August 2010, Dr. Rudder examined Plaintiff twice, noting both times that Plaintiff reported her pain and depression worsening and that the medications did not help. (Tr. 305-06). Dr. Rudder examined Plaintiff eight more times from September 23, 2010 through November 4, 2010, during which Plaintiff reported that her headaches, pain, anxiety, fatigue and depression increased. (Tr. 315, 324). A physical therapy evaluation showed that Plaintiff suffered from poor endurance, loss of balance, decreased range of motion, decreased strength, muscle spasms, poor posture, and poor work tolerance. (Tr. 322). Treatment records from 2011 also show that Plaintiff's pain and limitations increased. (Tr. 422, 441, 446–55, 456–59, 464–67, 468-69). Dr. Rudder gave Plaintiff a 95 percent disability rating using the Functional Rating Index. (Tr. 455). In addition, Plaintiff's activities of daily living decreased and she was no longer able to work or drive because of her cervical pain, as per Dr. Rudder's instructions. (Tr. 469).

**C.     The ALJ's Findings**

The ALJ found that Plaintiff met the insured status requirements through December 31, 2014, and had not engaged in substantial gainful activity since February 25, 2010, her alleged onset date. (Tr. 15). The ALJ also found that Plaintiff's cervical spondylosis, degenerative disc disease of the lumbar spine, hypertension, diabetes mellitus, and effective disorder were severe impairments, but that they did not meet or equal any of the listed impairments. *Id.* The ALJ further found that Plaintiff had moderate restriction in her activities of daily living, and mild difficulties with social functioning, concentration and persistence or pace. (Tr. 15-16).

He determined that Plaintiff had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a). *Id.* He also found that Plaintiff could stand or walk up to two hours in an eight-hour day, occasionally perform postural movements and use ramps and stairs, frequently handle and finger, and had the ability to remember and follow simple and

detailed instructions. *Id*. Consequently, the ALJ concluded that Plaintiff is capable of performing her past relevant work, as well as working as a receptionist, record clerk, and an order clerk, and thus was not disabled under the Act. *Id*.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing her past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes her from performing her past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236

(5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Bragg v. Comm'r of Soc. Sec. Admin.*, 567 F. Supp. 2d 893, 904 (N.D. Tex. 2008) (Godbey, J.) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), and 1383(C)(3)). "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Id.* (citing *Leggett v. Charter*, 67 F.3d 558, 564 (5th Cir. 1995) (internal citations omitted)). Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### III. ANANLYSIS

Plaintiff argues the ALJ rejected the opinions of her long-term, treating source, Dr. Rudder, without conducting the analysis required by 20 C.F.R. § 404.1527(d). (Doc. 14-1 at 11). Plaintiff claims that the ALJ (1) omitted Dr. Rudder's July 2010 opinions on Plaintiff's functional limitations (Tr. 289); (2) omitted Dr. Rudder's second functional assessment preformed in May 2011 (Tr. 446-55); and (3) gave little weight to Dr. Rudder's August 2011 opinions regarding Plaintiff's functional capacity determined over the course of four years of treatment. *Id*. at 11-13. She asserts that the ALJ erroneously gave little weight to Dr. Rudder's August 2011 assessment because the ALJ believed it was "inconsistent" with Dr. Rudder's

evaluation from 2010.  *Id*. at 13.  Plaintiff notes that that the January 2010 evaluation was before her alleged disability on-set date of February 25, 2010.  *Id*.  Plaintiff additionally contests the ALJ's rejection of Dr. Rudder's opinions as "inconsistent with the medical expert residual functional capacity assessment," arguing that the ALJ cannot give more weight to the non-examining medical expert's assessment and omit a treating specialist's opinion without performing the required 20 C.F.R. § 404.1527(d) analysis.  *Id*. at 13-14.

Defendant counters that "the ALJ performed a thorough analysis of Plaintiff's condition," and declares that "Plaintiff's allegation is without merit." (Doc. 15 at 6).  Defendant argues that requiring the ALJ to specifically discuss Dr. Rudder's July 2010 and May 2011 opinions, as Plaintiff suggests, would "constitute an unnecessarily rigid approach." *Id.* (citation omitted). Defendant avers that because Dr. Rudder's opinions do not contain "references to any diagnostic studies, tests, or specific clinical evaluations… [and are] based on objective evidence," based on established precedent, they "will not support a finding of disability."[4]  *Id.*  Defendant further argues that it is ultimately the Commissioner's decision whether Dr. Rudder's reports/forms constitute an opinion on the issue of disability.  *Id.* at 7.  And in response to Plaintiff's argument that the ALJ did not properly assess Dr. Rudder's opinions under 20 C.F.R. §404.1527, Defendant only cites to the ALJ's opinion as a whole.  (*Id.* at 7).

"[T]he ALJ is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." *Id.*  Though "[o]rdinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining

---

[4] Defendant cites *Perez v. Barnhart*, 415 F.3d 457, 465-55 (5th Cir. 2005); and *Greenspan*, 38 F.3d at 237-38.

disability." *Greenspan*, 38 F.3d at 237 (citing *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)).  Consequently, "absent reliable medical evidence from a treating or examining physician contradicting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(c)(2)." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (emphasis in original).  In doing so, the Commissioner must consider the following six factors:

> (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination; (3) the nature and extent of the treatment relationship; (4) the support of the physician's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating physician.

*Id.* at 455-56.  If the ALJ fails to perform the analysis required under Section 404.1527(c)(2), the case should be remanded so that he can do so.  *Newton*, 209 F.3d at 456; *McDonald v. Apfel*, No. 3-97-CV-2035-R, 1998 WL 159938, *8 (N.D. Tex. Mar 31, 1998) (Buchmeyer, C.J.).

Here, there is no indication in the record that the ALJ performed the analysis required by 20 C.F.R. §404.1527(c)(2).  Moreover, the ALJ's decision does not include the "good reasons" he chose not to give Dr. Rudder's opinions controlling weight.  *See* 20 C.F.R. §404.1527(c)(2) (in the event a treating source's opinion is not given controlling weight, "good reasons" for that decision are "always" given in the notice of determination or decision).  The ALJ stated only that Dr. Rudder's opinion was "inconsistent with the medical records and… the Functional Evaluation." (Tr. 19.)  This is insufficient.  Accordingly, this case should be remanded for the conduct of further proceedings consistent with the findings and conclusions herein.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment* (Doc. 14) should be **GRANTED**, Defendant's Motion for Summary Judgment (Doc. 15) should be **DENIED**, the Commissioner's decision should be **REVERSED**, and the case should be **REMANDED** for further proceedings**.**

**SIGNED** July 26, 2013.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE